UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JEFFREY A. BARROWS,

                Plaintiff,

   -vs-

                                                      DECISION AND ORDER
                                                        09-CV-6554 CJS

SENECA FOODS,

                Defendant.

_____

APPEARANCES

For Plaintiff:                      Christina A. Agola, Esq.
                                         1415 Monroe Avenue
                                         Brighton, New York 14618

For Defendants:              Thomas E. Brydges, Esq.
                                       Jaeckle, Fleischmann & Mugel, LLP
                                       12 Fountain Plaza
                                       Buffalo, New York 14202-2292

INTRODUCTION

     This is an action alleging employment discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, and the New York Human Rights Law ("NYHRL"), Executive Law § 290 *et seq*. Now before the Court is Seneca Foods Corporation's ("Defendant") motion for summary judgment (Docket No. [#11]). The application is granted.

BACKGROUND

Unless otherwise noted, the following are the facts of this case viewed in the light most favorable to Plaintiff. Defendant operates a vegetable processing plan in Leicester, New York. Plaintiff was employed at the Leicester plan as a seasonal employee, from 1997 until 2009. The processing season ran from June to November of each year, after which Plaintiff would be laid off and receive unemployment benefits until the following season. During the 2007-2008 processing season, Plaintiff was laid off on November 16, 2007, and not rehired until July 14, 2008.[1] *See*, Affidavit of Gary Ellis, Exhibit 3.

Plaintiff alleges that one of his male supervisors, Victor Sanabria ("Sanabria"), created a sexually hostile working environment, by making sexually explicit comments, and by striking Plaintiff in the genitals. On September 3, 2008, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). In pertinent part, the complaint stated:

> Over the past five years and continuing to this date, I have been subject to severe and repeated sexual harassment by male co-workers and managers on the production line. The unlawful conduct by my supervisor includes crude sexual language, crude sexual jokes, referring to male employees in bizarre and sexually obscene terms which occurred as late

---

[1] This fact is significant because, as discussed further below, in both his EEOC complaint and his Complaint in this action, Plaintiff indicated that the alleged verbal harassment by Sanabria "occurred as late as the Spring of 2008." However, it is undisputed that Plaintiff was not working in the Spring of 2008. In it motion for summary judgment, Defendant points out that the phrase "occurred as late as the Spring of 2008" indicates that the harassment did not occur after that date. Defendant further points out that, since Plaintiff was not working in the Spring of 2008, for the alleged harassment to have occurred within 300 days of Plaintiff's EEOC complaint filing, it would have had to have occurred between November 8, 2007 and November 16, 2007. However, Plaintiff has not identified any specific incident that occurred within that time frame.

>as the Spring of 2008, and the unwanted physical touching of male
>genitalia, the last occasion of which occurred within the past 300 days of
>filing this charge, specifically, on November 7, 2008[.]"[2]

EEOC Complaint (emphasis added). At Plaintiff's deposition, he indicated that the only person who sexually harassed him was Sanabria. Plaintiff alleges that he complained to his supervisors about Sanabria, but they took no action.

On November 2, 2009, Plaintiff commenced this action. Plaintiff is asserting two causes of action: A claim for hostile environment sex discrimination under Title VII, and a claim for hostile environment sex discrimination under the NYHRL. *See*, Agola Declaration ¶ 3. In the Complaint, Plaintiff stated, in pertinent part:

>Over the course of the past five years and continuing to this date, Plaintiff
>has been subject to severe and repeated sexual harassment by male co-workers and managers[3]
>
>The unlawful conduct by my supervisor includes crude sexual language,
>crude sexual jokes, referring to male employees in bizarre and sexually
>obscene terms which occurred as late as the spring of 2008 and continues
>to this day, along with the unwanted physical touching of male genitalia,
>the last occasion of which occurred within the past 300 days of Plaintiff
>filing his charge with the EEOC, specifically, on November 7, 2008,[4] as a

---

[2] The date set forth in the above-quoted passage, November 7, 2008, was obviously a typographical error, since the complaint was written in September 2008, which is prior to that date. Defendant maintains that Plaintiff apparently intended to indicate that the physical harassment occurred last on November 7, 2007, since, in most cases, the period between November 7th and September 3rd is three-hundred days, which corresponds to the statute of limitations for filing an EEOC complaint. (cont.) Defendant points out, however, that Plaintiff seemingly blundered in this regard, since 2008 was a leap year, so that the period between November 7, 2007 and September 3, 2008 was actually 301 days. Plaintiff now admits that, with regard to the alleged physical abuse, the EEOC Complaint's reference to November 7, 2008 was a typographical error, and that the testicle-grabbing incident actually occurred "several years earlier." Plaintiff's Response to Defendant's Local Rule 56.1 Statement, ¶ 28. Plaintiff does not specifically deny that he intended to indicate that the incident occurred on November 7, 2007 in a mistaken attempt to place the incident within 300 days of the filing of the EEOC complaint.

[3] As noted earlier, at deposition Plaintiff admitted that this allegation is incorrect, since he was not harassed by anyone except Sanabria.

[4] In the Complaint in this action, Plaintiff repeated the typographical error from the EEOC Complaint.

3

> means to degrade males in the workplace.
>
> ***
>
> As a result of Plaintiff's complaints of unremedied same sex harassment in the workplace occurring over the course of the past five years, Plaintiff has been subject to a continuing and unabated pattern of harassment on the basis of sex, which continues, unabated, to this day.

Complaint [#1] at ¶ ¶ 9-10, 12.

During discovery, Defendant attempted to pin Plaintiff down as to the dates of the alleged harassment. In Defendant's First Set of Interrogatories, Interrogatory No. 1, Defendant posed this question:

> With respect to the allegations contained in paragraph 9 of the Complaint, please identify all facts that support the Plaintiff's contention that he was subject to sexual harassment by male employees [sic] of Defendant during the last five years, including the date of alleged harassment, the substance of what alleged harassing activities occurred, the name of the alleged harasser, [and] the names of all individuals who have knowledge of the alleged harassment[.],

Barrows Affidavit, Ex. A, p. 5 (emphasis added). On March 15, 2010, Plaintiff, with the assistance of his attorney, filed responses to the interrogatories. *Id*. at pp. 5-6. Plaintiff answered the foregoing interrogatory, Interrogatory No. 1, in pertinent part, as follows:

> Plaintiff has been subjected to over the course of the past five years unwanted physical touching of the male genitalia by his direct supervisor Victor Sanabria. His direct supervisor would frequently tap and swat his penis, these incidents occurred on a weekly basis up to three to four times per week. On one particular occasion, while Plaintiff was pushing a wheel barrow weighing approximately four hundred pounds, his supervisor, Sanabria, grabbed his testicles by his hands in a vice like grip causing extreme pain and embarrassment to Plaintiff.[5] Sanabria would tell Plaintiff

---

[5] From the entire record, it appears that the alleged testicle-grabbing incident occurred in or about August 2007, which is when Gary Ellis ("Ellis") became Plant Manager. *See*, Ellis Deposition at p. 67 (Ellis became Plant Manager on August 1, 2007) In that regard, Plaintiff maintains that the incident occurred because of an argument that he was having with Sanabria over punching out the time clock when leaving the Plant. *See*, Pl. Dep. at pp. 75-77. Plaintiff states that the argument arose because Ellis had recently

over the past five years on an almost daily basis to "suck my dick"; "come here and give me a blow job" and "hurry up jerk off before I stick it up your ass"; Sanabria also asked Plaintiff if he wanted to go to the "Monrochrome room" to suck his dick. He called him a "faggot," "queer," "idiot" and "asshole."

*Id*. (emphasis added).

Despite such alleged language by Sanabria, Plaintiff indicates that he is a heterosexual, has never been accused of being homosexual, and has no reason to believe that Sanabria thought that Plaintiff was a homosexual. Pl. Dep. at pp. 20,165-166. Moreover, while Plaintiff contends that such incidents occurred on "an almost daily basis," the record indicates that Plaintiff worked apart from most of the other employees at the processing plant, including Sanabria, in a structure called the "Beet Shack." *See*, Pl. Dep. at pp. 63-64, 67, 140, 246, 279. Plaintiff indicated that the person from whom he received directions on a daily basis was a female office employee named Tammy. Pl. Dep. at 56. Moreover, Sanabria indicates that he had responsibility for supervising approximately 100 employees, and states: "I [did] not have a great deal of contact with the employees in the grading area during the workday, including Mr. Barrows. . . . My contact with Mr. Barrows [was] very infrequent , and there may [have been] days where I [did] not come into contact with him at all." Sanabria Aff. ¶ 3. Similarly, William Wallingford ("Wallingford"), who, like Sanabria, was a production supervisor, states: "The area where the beets are graded is outside, whereas most of the production is inside the

---

become Plant manager, and Sanabria felt that he could leave work without punching out because he was one of Ellis's favored employees. *See*, Pl. Dep. at p. 77 ("I believe he was telling me, *now that Gary Ellis was the plant manager*, he [Sanabria] could do anything he wanted.") (emphasis added); *but see*, Affidavit of William Wallingford, ¶ 4 (Indicating that incident likely occurred in July 2007 at the latest, because he remembers that Plaintiff told him about the incident during the pea-processing season).

plant. Accordingly, the production supervisor ha[d] only occasional contact with Barrows. [Barrows] is a smoker and prefer[red] to work independently where he d[id] not have constant supervision[.]" Wallingford Aff. ¶ 8.[6]

In any event, in Interrogatory No. 2, Defendant asked Plaintiff to describe any instance in which an employee of Defendant used crude sexual language, as alleged in the EEOC complaint. Defendant asked Plaintiff to "identify the substance of each statement, the date it was made and any individuals with knowledge regarding the statement." Plaintiff responded to the interrogatory by referring Defendant back to his answer to Interrogatory No. 1. (See above) At interrogatory No. 5, Defendant asked Plaintiff to identify any instances in which an employee of Defendant "touched the genitals of any other employee," including the date and names of the employees involved. Again, Plaintiff responded to the interrogatory by referring Defendant back to his answer to Interrogatory No. 1. *See*, Defendant's Summary Judgment Motion, Appendix F.[7]

---

[6]These contentions by Sanabria and Wallingford are not disputed in Plaintiff's opposition to Defendant's summary judgment motion. To the contrary, Plaintiff admits that he was "not constantly supervised and may not see a shift supervisor at all" during the workday. Plaintiff's Response to Defendant's Local Rule 56.1 Statement. ¶ ¶ 11-12.

[7]Accordingly, in his interrogatory responses Plaintiff did not provide any specific dates for the alleged harassment, with one exception. Specifically, Plaintiff alleged that Sanabria hit him in the testicles on September 12, 2008, which was *after* Plaintiff filed his EEOC Complaint. This alleged incident did not occur within 300 days prior to the date Plaintiff filed his EEOC Complaint, and Plaintiff never amended his EEOC Complaint to include this incident. Therefore, the Court does not consider the September 12, 2008 incident as an exhausted claim that is part of this lawsuit. On this point, the Court is aware that a claimant is not required to separately exhaust claims that occur subsequent to the filing of an EEOC complaint, as long as the additional incidents are reasonably related to the claims set forth in the EEOC Complaint. *See, e.g., Hoffman v. Williamsville School Dist.*, No. 10–4333–cv, 2011 WL 5120374 at *1 (2d Cir. Oct. 31, 2011) ("An allegation not set forth in an administrative charge will be barred as unexhausted unless it is reasonably related to the allegations in the charge. A new allegation will be considered reasonably related if the administrative charge provided the EEOC with sufficient notice to investigate the allegation.") (citation omitted). However, this doctrine presumes that the claimant's EEOC complaint alleges incidents that occurred within 300 days prior to the filing of the complaint. If the complaint alleges incidents that

During Plaintiff's deposition, Defendant again tried, with little success, to get a clear answer from Plaintiff concerning the dates of the alleged harassment.[8] In that regard, the following testimony is illustrative:

> Q. Had Mr. Sanabria ever touched you in a way you thought was inappropriate prior to this incident [the testicle-grabbing incident in or about 2006]?
>
> A. Many times.
>
> Q. Well, I want to know who, when, where.  Can you tell me when is the first time –
>
> A. I can't remember.
>
> Q. – he touched you?
>
> A. I can't remember exactly when that was.
>
> ***
>
> Q. Who else did he do it to?
>
> A. Many others.
>
> ***
>
> Q. What other employees did you see him do this to?
>
> A. I can't remember right now.

---

occurred more than 300 days prior to the filing of the EEOC complaint, then the claimant has no timely claim, and events that occur after the filing of the complaint cannot be reasonably related to a timely claim.

[8]As discussed further below, Plaintiff's deposition transcript is replete with instances where Plaintiff implausibly claimed not to remember certain important facts.  For example, Plaintiff, age 52, claimed that he was unable to recall what he did for employment during an entire fourteen-year period. Pl. Dep. at 23 ("Q. So we have about fourteen years unaccounted for.  Did you have any other employment during those fourteen years?  A. I can't remember.").  At another point, Plaintiff claimed to be unable to remember any of the names of the "many people" who Sanabria allegedly struck in the genitals. Pl. Dep. at 88-89 ("Q. What other employees did you see him do this to?  A. I can't remember right now. . . . . A. I know they were other people that worked down in the plant.  Q. Well, who?  A. I can't remember right now.  But I'm sure in trial they would probably remember.  Q. Well, how are you going to identify them, if you don't know who they are?  A. Maybe I'll remember later who they are. . . .  I'm sure when it all comes down, everybody will know everything."); *see also id*. at p. 96 (same).

Pl. Dep. at 87-88.  Later in the deposition, after taking a break to collect his thoughts, Plaintiff testified as follows:

> Q. You testified to this incident with Mr. Sanabria and claims that there were more than one occasion where he tapped you and others.  Any other incidents with Mr. Sanabria that we haven't discussed that you think support your case?
>
> A. *Probably quite a few*.  Again –
>
> Q. I want to know specifically.
>
> A. *Me too.*  You know, so I have to be very careful and make sure I get it right, because right now –
>
> Q. Take your time.
>
> A. Maybe we can get back to that.
>
> Q. We just took a break when you were going to think about these things. That did not help you, the break at all?
>
> A. No.

Pl. Dep. at pp. 103-104 (emphasis added).

In fact, despite indicating that he had no memory problem,[9] Plaintiff claimed to be unable to remember relatively simple facts,[10] such as the name of his immediate

---

[9] *See*, Pl. Dep. at p. 22 ("Q. Do you have a problem, memory issue at all?  A. Do I have a problem, memory issue?  Not that I know of.").

[10] Plaintiff also claimed not to understand that his claim was for sexual discrimination. Pl. Dep. at 100 ("Q. You claim is, as I understand it, Mr. Barrows, is that you've been discriminated against on account of your sex.  That's claimed.  Do you understand that that's your claim?  A. No, not really.  Because I think there's more than just that.  But maybe we ought to take a break and I can think a little bit better.")  Plaintiff indicated generally that he believed that he had been mistreated by a supervisor, Mr. Ellis, for years because of a personal vendetta that Ellis had against him, because Plaintiff's fiancé had fired Ellis' daughter.  Such alleged mistreatment consisted of denying Plaintiff raises, breaks, and opportunities for advancement. See, Pl. Dep. at 91-95, 99, 105-106, 111-113, 119-120, 134, 138; see also, id. at p. 207 ("Q. Again, you believe that was because she [Plaintiff's fiancé] fired Gary's [Ellis'] daughter?  A. That was the beginning of it all.  Yeah.").  Such alleged harassment by Ellis was not part of

supervisor:

> Q. Your immediate supervisor, the first person that you would go to if you had an issue, who would that be, about your job?
>
> A. The first person I would go to depends on what the issue was.
>
> Q. Well, something with your job. You had a question about your duties or your job, what am I supposed to be doing today, who would you go to?
>
> A. No one. I always know what I'm supposed to be doing.
>
> Q. Who was your immediate supervisor?
>
> A. I don't know.
>
> ***
>
> Q. We'll get through this a lot faster, Mr. Barrows -
>
> A. I'm giving you an honest answer.
>
> Q. -if you don't argue with me.
>
> A. I'm not arguing with you.
>
> Ms. Persaud:[11]  I'm going to object to your tone. You are being argumentative with my client and witness.
>
> Mr. Brydges: I am responding to him. I asked a very simple question. He worked at this plant twelve years. He doesn't --
>
> The Witness: Fourteen.
>
> Mr. Brydges: – doesn't know who his supervisor is?

---

the EEOC Complaint or the Complaint in this action. In any event, Plaintiff indicated in his interrogatory responses that he was never denied earnings, job benefits, or job opportunities as a result of alleged harassment. See, Plaintiff's response to Defendant's Interrogatory No. 20, Def. Summary Judgment Motion Appendix F.

[11] At the time of the deposition, Persaud was an associate attorney in the law office of Christina Agola, Esq.

>Ms. Persaud:  He is responding to your question.  If you --
>
>Mr. Brydges:  He is not being responsive.
>
>Ms. Persaud: If you asked a more pointed question, perhaps you would get a more pointed answer.
>
>The Witness:  Yeah.
>
>Mr. Brydges:  Who was your supervisor?  How much more pointed can I get?

Pl. Dep. at pp. 55-57.

Overall, Plaintiff repeatedly indicated that he could not recall information at the deposition, but that all the information relating to his claim would be produced *before trial*:

>Q. You made a complaint sir.
>
>A. Yes.
>
>Q. And we are in federal court.  And it's based upon a claim of sex discrimination.  You're telling me today you can't tell me what the basis for that is?
>
>Ms. Persaud: Form.
>
>The Witness:  I can tell you, before we go to trial, you'll have everything you need.
>
>Mr. Brydges:  I want to know today.  When you filled out that complaint under oath and it was filed, you must have had a basis for asserting that you were discriminated against on account of your sex.  Tell me what that basis was.
>
>Ms. Persaud:  Form objection, to the extent it calls for a legal conclusion. Mr. Barrows, you can answer.

    The Witness: I am not exactly sure how to answer that right now.

Pl. Dep. at pp. 102-103; *see also, id.* at p. 105 (Plaintiff: "It's taken people a long time to get to this point today. So how could you expect me to remember every single thing right now? I need a little more time with this. I can assure you, you will have everything you need before trial.").

    On December 17, 2010, Defendant filed the subject motion for summary judgment. Defendant maintains that Plaintiff's Title VII claim is time-barred, since the complained-of events occurred more than 300 days before he filed his EEOC complaint. Alternatively, Defendant contends that Plaintiff cannot demonstrate that Sanabria discriminated against him because of Plaintiff's sex, and that any such discrimination cannot be imputed to Defendant. On April 20, 2011, Plaintiff filed a response,[12] and on May 19, 2011, Defendant filed a reply. On January 19, 2012, counsel for the parties appeared before the undersigned for oral argument.

## ANALYSIS

*Rule 56*

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary

---

[12] As part of such response, Plaintiff's counsel included a document entitled "Plaintiff's Responses to Defendant's Local Rule 56.1 Statement," as well as a 22-page document entitled "Plaintiff's Local Rule 56.1 Counter-Statement." The Court has previously advised Plaintiff's counsel on several occasions not file the latter document. *See, e.g., Glenwright v. Xerox Corp.*, No. 07-CV-6325L, — F.Supp.2d — , 2011 WL 6209180 at *5, n. 5 (W.D.N.Y. Dec. 14, 2011) (Larimer, J.) ("Local Rule 56 does not provide for such a filing.")

judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996). Once that burden has been established, the burden shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(c). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, it is well settled that the party opposing summary judgment may not create a triable issue of fact "merely by submitting an affidavit that disputes his own prior sworn testimony." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir.1996) (citations omitted). Rather, such affidavits are to be disregarded. *Mack v. United States*, 814 F.2d 120, 124 (2d Cir.1987) (citations omitted). Summary judgment is appropriate only where, "after drawing all reasonable inferences

in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (citations and internal quotations omitted). Nevertheless, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). Moreover, a plaintiff may not defeat a motion for summary judgment merely by relying upon "purely conclusory allegations of discrimination, absent any concrete particulars." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. den*. 474 U.S. 829 (1985).

*Title VII*

Title VII "makes it unlawful for an employer to discriminate against any individual with respect to the 'compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Richardson v. New York State Dep't of Correctional Servs.*, 180 F.3d 426, 436 (2d Cir. 1999)(citations omitted), *abrogated on other grounds by Kessler v. Westchester County Dept. of Soc.*

*Servs.*, 461 F.3d 199 (2nd Cir. 2006).[13]  In this regard, "Title VII is not a general civility code for the American workplace; it prohibits only harassment that is discriminatory." *Marshall v. NYC Bd. of Elections*, No. 07-4561-cv, 322 Fed.Appx. 17, 2009 WL 928083 at *19 (2d Cir. Apr. 7, 2009) (citation and internal quotation marks omitted).  Moreover, "[t]he mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." *Raum v. Laidlaw Ltd.*, 173 F.3d 845, 1999 WL 248157 at *1 (2d Cir. 1999) (table) (citation and internal quotation marks omitted).

<u>The Alleged Harassment Was Not Because of Plaintiff's Sex</u>

The record, viewed in the light most-favorable to Plaintiff, indicates that Sanabria constantly made vulgar comments, such as "suck my dick," "come here and give me a blowjob," and "Faggot, get the shovel [and] go out there and clean the drain out," to Plaintiff and other male employees.[14]  Sanabria made such comments to some, but not all, male employees.[15]  In addition, Plaintiff contends that Sanabria called him an "idiot" and an "asshole."  The record further indicates that Sanabria grabbed Plaintiff's testicles on one occasion, during a work-related argument, and that Sanabria hit Plaintiff and other male employees in the crotch on other occasions.  There is no indication that

---

[13] It is well settled that "claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII." *Torres v. Pisano*, 116 F.3d 625, 629, n.1 (2d Cir. 1997), *cert den*. 522 U.S. 997 (1997).  Consequently, unless otherwise noted, references to Title VII herein are also intended to refer to the NYHRL.

[14] *See e.g.*, Plaintiff's Deposition at pp. 161, 164-167.

[15] *See*, Plaintiff's Deposition at p. 165 ("Q. Is faggot a term that he used on a regular basis? A. Yes.  Q. Again, to a number of people?  A. Yeah. I mean, if he called twenty, thirty out of two hundred a number, [sic] that could be a low number.  I don't know.")

Sanabria was homosexual or that he believed that Plaintiff was a homosexual. Nor is there any indication that Sanabria had any discriminatory animus toward males generally, or that he treated women better than men.[16]

In *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998 (1988) ("*Oncale*"), the Supreme Court indicated that same-sex sexual harassment may be actionable under Title VII. *See, Simonton v. Runyon*, 232 F.3d 33, 36 (2d Cir. 2000) ("In *Oncale*, the Supreme Court rejected a *per se* rule that same-sex sexual harassment was non-cognizable under Title VII.") Significantly, however, "*Oncale* did not suggest . . . that male harassment of other males always violates Title VII. [Instead,] *Oncale* emphasized that every victim of such harassment must show that he was harassed *because he was male*." *Id*., 232 F.3d at 36 (emphasis in original). In this regard, a male plaintiff may show same-sex harassment that violates Title VII by establishing that the male harasser is a homosexual, by showing that the harasser used "sex-specific and derogatory terms" that "make it clear that the harasser [was] motivated by general hostility to the presence of [males] in the workplace," or by offering comparative evidence showing that the harasser treated females better than males. *See, Oncale*, 523 U.S. at 80-81.

In this case, Plaintiff maintains that Sanabria subjected him and certain other male employees to a steady stream of profane comments, and that he also hit them in the crotch on a fairly regular basis. Accepting Plaintiff's contentions as true for purposes

---

[16] At deposition, Plaintiff speculated that some unnamed male supervisors might treat some female employees better, in exchange for sexual favors. However, Plaintiff was unable to cite any specific instance of such conduct, Pl. Dep. at pp. 101-102, and in any event such fact would not show that Sanabria treated women better than men.

15

of this motion, such conduct by Sanabria was abusive and reprehensible.  However, on the entire record, Plaintiff has not shown that he suffered discrimination because he was male, as required by *Oncale*.  Accordingly, Defendant's summary judgment motion is granted.

## CONCLUSION

For the foregoing reasons, Defendant's summary judgment motion [#11] is granted and this action is dismissed.

SO ORDERED.

Dated: Rochester, New York
     January 30, 2012

ENTER:

 /s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge